UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ELIZABETH L. | : |
| | : |
| v. | : C.A. No. 24-00244-MRD |
| | : |
| LELAND C. DUDEK, Acting Commissioner Social Security Administration | : : : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on June 24, 2024, seeking to reverse the Decision of the Commissioner.  On December 29, 2024, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security.  (ECF No. 15).  On January 27, 2025, Defendant filed a Motion to Affirm the Commissioner's Decision.  (ECF No. 17).  On March 3, 2025, Plaintiff filed a Reply brief.  (ECF No. 19).

This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.

Consequently, I recommend that Plaintiff's Motion for Reversal (ECF No. 15) be GRANTED and that the Commissioner's Motion to Affirm (ECF No. 17) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for benefits in May and June 2009. Her claims were denied initially and on reconsideration in January 2010 for which Plaintiff did not seek reconsideration. Plaintiff filed new applications in June and October 2010. Administrative Law Judge ("ALJ") Hugh Atkins reopened the prior applications and issued a favorable decision in 2012. In 2016, Plaintiff's benefits were terminated for failure to cooperate with a Continuing Disability Review ("CDR"). Plaintiff did not appeal the decision. Therefore, the decision became final.

Plaintiff subsequently filed an application for benefits in January 2019. On May 15, 2021, ALJ Paul McGinn issued an unfavorable decision to Plaintiff. The Appeals Council denied Plaintiff's request for review. Plaintiff filed suit in 2022 seeking to review the denial of her DIB application. See Document No. 1 in Elizabeth L. v. Kijakazi, Case 1:22-cv-00177 MSM (D.R.I.). On October 26, 2022, an Assented-to Motion for Judgment under Sentence Four (i.e., remand) was filed to allow for reconsideration of Plaintiff's request to reopen the 2016 unfavorable CDR determination and, if warranted, to issue a new decision on Plaintiff's eligibility for SSI and DIB for the relevant periods. The Motion was granted on October 27, 2022. A hearing was then held before ALJ Laura Bernasconi on October 24, 2023 at which Plaintiff, represented by counsel and a Vocational Expert ("VE") appeared and testified. (Tr. 28-51). On April 2, 2024, the ALJ issued an unfavorable decision to

Plaintiff. (Tr. 1-20). On May 13, 2024, the Appeals Council denied Plaintiff's request for review. A second appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ improperly denied her request to reopen the CDR and failed to fully and fairly evaluate the record regarding her current SSI claim. The Commissioner disputes Plaintiff's contentions and argues that affirmance is warranted.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals

-4-

Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity

which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or

training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence,

-7-

Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to

retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering

her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to

consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

V.   APPLICATION AND ANALYSIS

A.   The ALJ's Decision

First, the ALJ denied Plaintiff's request to reopen the 2016 CDR determination. She concluded that Plaintiff's request was untimely as to her SSI application and that she failed to establish "good cause" to reopen her DIB case. (Tr. 5-7). Second, the ALJ then considered the merits of Plaintiff's 2019 SSI Application and denied SSI because her RFC for a limited range of light duty work did not preclude employment. (Tr. 19-20).

B.   The ALJ Failed to Properly Follow the Court's Prior Remand Order

Plaintiff was awarded DIB by an ALJ in 2012. Her case was reviewed in 2016, and benefits were terminated due to a failure to cooperate with the CDR process. She failed to attend an appointment for a consultative examination. There was no finding that Plaintiff's condition had improved and that she was no longer disabled.

This case was remanded in 2023 to allow for reconsideration of Plaintiff's request to reopen the prior CDR determination in accordance with HALLEX I-2-9-

10 and I-2-9-40. (Tr. 123). The ALJ did so and found that Plaintiff's request to reopen was timely as to her DIB claim and untimely as to her SSI claim. (Tr. 5). The ALJ applied a "good cause" standard and concluded that the circumstances did not establish Plaintiff's "mental incapacity" to appeal the CDR termination of benefits at the relevant time. (Tr. 5-6). Thus, the ALJ did not find "good cause" to reopen the prior CDR determination. (Tr. 6).

Plaintiff argues that the ALJ failed to properly follow the Appeals Council's Remand Order by applying only HALLEX I-2-9-10 and not HALLEX I-2-9-40.[1] Plaintiff next argues that the ALJ erred by failing to seek a medical expert's opinion as to her mental capacity at the relevant time she missed the 2016 consultative examination and the CDR resulted in termination of benefits and failed to appeal. Finally, Plaintiff asserts that the ALJ failed to properly apply SSR 91-5p.

The Commissioner counters that the denial of a request to reopen is discretionary and unreviewable by the Court absent a colorable constitutional claim. He also asserts that, even if reviewable, the ALJ's finding that Plaintiff had the mental capacity to appeal the 2016 CDR termination of benefits is supported by substantial evidence and must be affirmed.

Based on the Court's review of the Remand Order, the applicable legal framework, and the ALJ's handling of the issue on remand, the Court is compelled to agree with Plaintiff and recommend yet another remand. First, the remand motion in Case 1:22-cv-00177 MSM (ECF No. 12) makes clear that the ALJ is required to "reconsider [Plaintiff's] request to reopen the unfavorable 2016 [CDR] review

---

[1] Although the ALJ does not explicitly reference HALLEX I-2-9-40 in her analysis, she does apply SSR 91-5 and relies upon HALLEX I-2-9-20 which, in part, deals with the circumstances permitting expansion of the time period to request reopening.

determination <u>in accordance with</u> HALLEX I-2-9-10 and I-2-9-40." (emphasis added). In discussing the "good cause" standard outlined in HALLEX I-2-9-40, the ALJ plainly misstates the third circumstance constituting "good cause." (Tr. 5). HALLEX I-2-9-40 provides that "good cause" exists for reopening when "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." The ALJ mistakenly narrowed that circumstance to cases where "a clerical error is made." (Tr. 5). Thus, the ALJ arguably failed to act "in accordance with" HALLEX I-2-9-40.

Next, the ALJ fails to both accurately reiterate the evidence of record and to provide specific record citations for the evidence purportedly underlying her conclusions. For instance, the ALJ notes, citing Exhibit B11E, that Plaintiff bases her "good cause" argument on the lack of mental capacity to appeal. However, the referenced exhibit actually indicates that Plaintiff missed the CDR because "she was in the midst of a divorce, suffering from severe mental illness, and homeless." (Tr. 448). The ALJ also summarizes Plaintiff's testimony on the failure to appeal timely as being "because she was going through a divorce and her husband failed to give her the mail. (<u>See</u> Hearing Testimony)" (Tr. 5). The Hearing Testimony is at Transcript pages 41-42 and is much more involved than is described by the ALJ. Plaintiff references going through her "really brutal divorce" at the time and her husband not giving her the mail, but, she also testified that she did not have any place to live and that the unexplained loss of DIB benefits caused her to "spiral even more into a depression" and to become homeless. (Tr. 42). She further testified that

-16-

it was not until she finally got back on her feet enough that she was able to pursue getting her disability benefits back. Id.

The ALJ observes that the divorce and the failure to receive mail were "regrettable" circumstances but "do not establish a mental incapacity such that good cause can be found for not appealing timely." (Tr. 5-6). It does not appear that the ALJ fully considered all of the potential "good cause" circumstances under HALLEX I-2-9-40. The ALJ focused on the mental incapacity issue and, without specific citation to the record, indicates that the longitudinal medical record does not support a "neurocognitive impairment." (Tr. 5). However, the reopening issue is not a longitudinal one. It is focused on the circumstances that caused Plaintiff to miss the CDR appointment and then later fail to file a timely appeal of the decision to terminate benefits. That is a multi-faceted issue involving the divorce, the withheld mail, i.e., lack of notice, the homelessness, and the impact of benefits cessation on Plaintiff's mental status at that relevant time. While the ALJ recognized that SSR 91-5p required her to evaluate "any mental or physical condition which limits the claimant's ability to do things for herself," (Tr. 5), she does not evaluate whether Plaintiff had any such condition(s) at the relevant time in late 2016/early 2017. The Court does not believe that the ALJ adequately examined those issues in the context of this record and that she failed to comply with the intent and spirit of this Court's Remand Order.

Additionally, the travel of this case was negatively impacted by the failure to properly adjudicate Plaintiff's DIB claim related to her 2019 Application. The DIB claim appears to have been closed in error as a "technical denial." (Tr. 69). The

DDS record notes that Plaintiff was alleging a disability onset date of October 1, 2007 and that she was approved for DIB in 2012 based on inability to sustain work due to psychological issues (depression and anxiety). Id. As discussed, previously, Plaintiff's DIB was terminated because she missed a CDR appointment and not based on any finding that she had medically improved. The "technical denial" resulted, as a practical matter, in the lack of any state agency examination of disability dating back to the onset date and the misleading finding that there was insufficient evidence for the post October 1, 2007 time period. (Tr. 71, 79). This finding makes no sense because Plaintiff was approved for DIB in 2012 with an onset date of March 30, 2007. (Tr. 4).

On balance, the Court concludes that the interests of fairness and justice require another look at this complex case. Remand is warranted to fully and fairly evaluate and reconsider Plaintiff's request to reopen the prior CDR determination and to fully and fairly adjudicate Plaintiff's DIB claim.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 15) be GRANTED and that the Commissioner's Motion to Affirm the Commissioner's Decision (ECF No. 17) be DENIED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for additional administrative proceedings consistent with this Decision.

Any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service

of this Report and Recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 11, 2025